United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANE EDWARD DROUSCHE, (TDCJ–CID #750819) Plaintiff, | § § § § § § | CIVIL ACTION NO 4:20–cv–03673 |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| LONNIE E. TOWNSEND, *et al*, Defendants. | § § § § § | |

OPINION AND ORDER ON DISMISSAL

The motions to dismiss by Defendants Lonnie E. Townsend, Bruce H. Frederick, Alfred A. Washington, and Sunday O. Aremu are granted. Dkts 11 & 13.

The complaint by Plaintiff Shane Edward Drousche is dismissed with prejudice. Dkt 1.

1. Background

Drousche is an inmate of the Texas Department of Criminal Justice—Correctional Institutions Division, Jester III Unit. He proceeds here *pro se*. He sues a number of officials at the Jester III Unit. These are Lonnie E. Townsend (as warden), Bruce H. Frederick (as assistant warden), Alfred A. Washington (as major), and Sunday O. Aremu (as correctional officer V). Liberally construed, Drousche asserts that Defendants were deliberately indifferent to the risks posed by COVID-19 in violation of the Eighth Amendment. Dkt 1.

He alleges as follows.

In mid-April 2020, an employee at the Jester IV unit tested positive for COVID-19. Despite this positive test, offenders from Jester II and III continued working and going to college at Jester IV. Offenders were also transported between units with 10–14 other offenders in a van. The van and handcuffs weren't sanitized between transports. So, too, were officers made to work and travel between units, spreading the virus.

The first positive employee case of COVID-19 was reported at the Jester III Unit on April 29, 2020. Shortly thereafter, the first offender case was reported. Beginning that same day, offenders weren't allowed to go to the chow hall. Sack meals were delivered to offenders in their dorms. Offenders were made to line up at the bars at the front of the dorm to receive their meals, receive medications, and undergo temperature checks by nurses.

There was no opportunity to socially distance in dorms. Nor was there any opportunity to socially distance in the communal shower or in the lines for medication and meals. And offenders who did not pose a threat to public safety and were eligible for release weren't released to allow for better social-distancing.

Drousche begged Defendants Washington, Townsend, and Frederick to allow him to stay in his cubicle while they passed out meals and medication. All three Defendants were indifferent to his pleas. Frederick told Drousche that "you better go to work or you'll be written a disciplinary case and be dropped a custody level." When Drousche expressed concerns to Townsend about the lack of COVID-19 precautions, Townsend responded, "What do you expect me to do about it?" When Droushce raised similar concerns with Washington, he said, "I don't have time for this."

On May 3rd, Drousche began to feel ill. His throat became sore, he lost his sense of taste and smell, his body ached, he had chills and fever, he was very tired, and he suffered from an extreme headache. His illness lasted about six days. During his illness, Drousche suffered

2

mental anguish and feared dying of COVID-19. On May 28th, Drousche tested positive for COVID-19. Even so, he wasn't placed in medical isolation.

Offenders continued to work in the kitchen, hallways, and other areas of the unit. Though some offenders were sent around to sanitize dorms by spraying bleach, they were unsupervised and usually stole the bleach. Offenders weren't given extra soap to wash their hands. And the personal protective equipment issued to them consisted of an ill-fitting cloth with strings on the corners.

During March and April, the Jester III Unit Administration began limiting the number of offenders in the chow hall and allowing only two offenders to sit at each table. It would often take eight hours to serve each meal. Defendant Aremu usually conducted supper chow. There would be 150 to 200 offenders packed into the chow hall. Aremu told Drousche that if he didn't like it, don't eat, and he said that he didn't want to run chow all night.

From May 4th until August 6th, all recreational activities were suspended. Drousche was confined to his cubicle unless showering, using the restroom, going to the infirmary, or lining up for chow. During this time, he was denied the basic human need of exercise. The lack of exercise caused muscle atrophy, increased knee, back, and neck pain, stomach pains, weight gain of over fifteen pounds, depression, anxiety, and mental health problems.

Drousche sued in October 2020, alleging civil rights violations resulting from exposure to COVID-19. Townsend, Frederick, and Aremu filed a motion to dismiss in February 2022. Dkt 11. Washington wasn't included in that motion when filed because the Office of the Attorney General hadn't obtained authorization to represent him in this lawsuit. Dkt 9. The Attorney General has since obtained such authority. Washington filed a motion to dismiss in March 2022. Dkt 13.

    2. Legal standard

Drousche's complaint is construed liberally because he proceeds *pro se*. *Coleman v United States*, 912 F3d 824, 828

3

(5th Cir 2019), citing *Erickson v Pardus*, 551 US 89, 94 (2007).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 US at 570. A claim has *facial plausibility* "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 US at 678, quoting *Twombly*, 550 US at 557.

Review on a motion to dismiss under Rule 12(b)(6) is constrained, being generally limited to the contents of the complaint and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014). The reviewing court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Walker v Beaumont Independent School*

*District*, 938 F3d 724, 735 (5th Cir 2019). But "courts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Vouchides v Houston Community College System*, 2011 WL 4592057, *5 (SD Tex), quoting *Gentiello v Rege*, 627 F3d 540, 544 (5th Cir 2010).

        3. Analysis

As noted, Drousche's complaint largely alleges a Section 1983 claim for deliberate indifference to his exposure to COVID-19. He also asserts claims construed as alleging *respondeat superior* liability.

        a. Deliberate indifference

Drousche alleges generally that Defendants gave inadequate attention to prevent his exposure to COVID-19 in violation of the Eighth Amendment.

The prohibition against cruel and unusual punishment in the Eighth Amendment guarantees prisoners the right not to be denied attention to their serious medical needs. See *Gobert v Caldwell*, 463 F3d 339, 345 (5th Cir 2006). Prison officials violate that right when they evince *deliberate indifference* to a prisoner's serious medical needs, resulting in the unnecessary and wanton infliction of pain. *Wilson v Seiter*, 501 US 294, 297 (1991).

Deliberate indifference to a prisoner's serious medical needs is thus actionable under 42 USC § 1983. Id at 105–07; *Jackson v Cain*, 864 F2d 1235, 1244 (5th Cir 1989). But the standard is an "extremely high" one to meet. *Domino v Texas Department of Criminal Justice*, 239 F3d 752, 756 (5th Cir 2001). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v Brenoettsy*, 158 F3d 908, 912 (5th Cir 1998), quoting *Farmer v Brennan*, 511 US 825, 837 (1994).

Binding precedent dictates that Plaintiff' has failed to state a viable deliberate-indifference claim. Near the start of the COVID-19 pandemic, the Fifth Circuit held that failure to eradicate COVID-19 within the prison system

doesn't evince deliberate indifference. *Valentine v Collier*, 978 F3d 154, 164–65 (5th Cir 2020). It determined that prison officials—and not a district court—were the proper parties to implement COVID-19 protocols. Id at 165 (citation omitted).

Drousche complains of nearly identical behavior as the plaintiff in *Valentine*. And here, as in *Valentine*, the pleadings show that Defendants took multiple affirmative steps to prevent the spread and transmission of the virus. This dispels "any argument that [Defendants] 'evince[d] a wanton disregard for any serious medical needs.'" See id at 164 (citation omitted).

This claim will be dismissed.

### b. Failure to release parole-eligible inmates

Drousche next alleges that TDCJ's failure to release nonviolent offenders during the early stages of the pandemic limited the inmates' ability to socially distance. The Fifth Circuit in *United States v Thompson* held that prisons have no obligation to release prisoners based on COVID-19 concerns. It also stated, "Fear of COVID doesn't automatically entitle a prisoner to release." 984 F3d 431, 434–35 (5th Cir 2021).

Beyond that, Defendants argue that they are unit-level employees. Dkt 11 at 9. As such, they aren't in a position to unilaterally release prisoners. See *Green v Richardson,* No H-20-1731, 2021 WL 3713061, *3–4 (SD Tex Aug 20, 2021) (explaining that wardens cannot authorize release from prison).

This claim will be dismissed.

### c. Outdoor recreation

Drousche asserts that the Defendants restricted outdoor exercise for ninety days in response to the pandemic in violation of the Eighth Amendment.

Prisoners don't have an absolute right to outdoor exercise. See *Lewis v Smith*, 277 F3d 1373, 2001 WL 1485821, *1 (5th Cir 2001). Extended deprivation of exercise opportunities may violate an inmate's Eighth

Amendment rights, but deprivation of exercise is not a *per se* constitutional violation. *Miller v Carson*, 563 F2d 741, 751 n 12 (5th Cir 1977); see also *Stewart v Winter*, 669 F2d 328, 336 n 19 (5th Cir 1982) (failure to provide recreation program does not, by itself, constitute cruel and unusual punishment).

To succeed on an Eighth Amendment claim that he was denied adequate recreation, Drousche must establish that prison officials failed to provide him with adequate exercise opportunities. *Ruiz v Estelle*, 679 F2d 1115, 1152 (5th Cir 1982). And he must show that prison officials acted with deliberate indifference to a substantial risk of harm to his health and safety. *Farmer v Brennan*, 511 US 825, 828 (1994); *Herman v Holiday*, 238 F3d 660, 664 (5th Cir 2001).

Drousche's conclusory allegations of deliberate indifference are insufficient to maintain his outdoor-recreation claim. See *Fernandez-Montes v Allied Pilots Association*, 987 F2d 278, 284 (5th Cir 1993). Drousche simply alleges that the three-month deprivation of exercise caused various adverse health effects and worsened other conditions. This is insufficient to plausibly infer that Defendants had actual knowledge of a substantial risk of serious harm to an inmate. This is especially so given the existence of legitimate security and health reasons for restricting Drousche's access to outdoor recreation. Cf *Bell v Wolfish*, 441 US 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

This claim will be dismissed.

### d. *Respondeat superior*

Drousche sues Lonnie E. Townsend (as warden), Bruce H. Frederick (as assistant warden), and Alfred A. Washington (as major), claiming that they were responsible for the operation of that unit. Drousche doesn't allege that they were personally involved in any of the asserted constitutional violations above. He seeks to

7

impose liability based solely on their positions as ultimate supervisors.

Assertion of liability on a *respondeat superior* basis necessarily fails where no claim of liability is sustained against an inferior employee. Restatement (Third) of Agency § 7.03(2) (ALI 2006). Here, none is.

This claim will be dismissed.

### 4. Conclusion

The motions to dismiss by Defendants Lonnie E. Townsend, Bruce H. Frederick, Alfred A. Washington, and Sunday O. Aremu are GRANTED. Dkts 11 & 13.

The complaint by Plaintiff Shane Edward Drousche is DISMISSED WITH PREJUDICE. Dkt 1. The motion to file Exhibit A containing Alfred A. Washington's last known address under seal is GRANTED. Dkt 8.

Any other pending motions are DENIED AS MOOT.

SO ORDERED.

Signed on  September 30, 2022 , at Houston, Texas.

Hon. Charles Eskridge
United States District Judge